All right. We have three cases on our morning docket. I think council are familiar with the lighting system. The one other thing I'll say is that the panel has read the briefs, we're familiar with the background, so you should use your limited time by diving right into the argument. And with that, our first case is Morrow v. Meacham. We'll hear first from Mr. James, whenever you're ready, sir. May it please the court and good morning. My name is David James. I represent the plaintiff's appellants, the surviving family of Austin Moon, a 22-year-old who was killed by defendant-appellee Jonathan Meacham during a police chase in Texas. This is an appeal from summary judgment on the issue of clearly established law. The district court correctly concluded that plaintiff's evidence could convince a jury that Meacham used unreasonable, deadly force because Moon posed no significant threat to anyone. But the district court erred in the clearly established law analysis. First, the district court misapplied precedent, and second, the court used Meacham's facts, even though it was a summary judgment stage. As to the clearly established law discussion, affirming here would effectively give police license to deliberately kill a fleeing suspect so long as that suspect is exceeding the speed limit in a motor vehicle. What is your best case that there is previously clearly established law that would have been violated by the police officer in this circumstance? Your Honor, the Supreme Court decision in Brouwer against Inyo County held that there was a seizure in a very similar roadblock used to surprise a speeding motorcyclist. And this court had previously held in Jameson against Shaw. Excuse me, Your Honor. That's a so-called dead man roadblock case. Is that right? Yes, Your Honor. So there's no roadblock in this circumstance. What would be the analogy that a police officer who's driving with a motorcycle list behind him would have analogized what the officer did in this circumstance to a so-called dead man roadblock? The material facts of the dead man roadblock were that the police in Brouwer and in Jameson against Shaw, which was a Fifth Circuit case, the police used a vehicle to surprise and kill an oncoming motorist who had been fleeing. So there's not a material difference to what the police officer did here because he slammed his brakes and slowed down from 100 miles an hour to 45 miles an hour in about nine seconds and then swerved in front of the oncoming motorcycle. So essentially he turned himself into a roadblock very similar to the Brouwer and the Jameson cases. And there's not a serious dispute of fact as to whether he realized or any reasonable officer would realize that was deadly force. So we have obviously seen the video, which is in the record, the dash cam video where you obviously can't see the motorcyclist behind, but you can see the speed on the speedometer of the police officer's vehicle. You can see the police officer where he is on the road. At summary judgment, we don't have to ignore or take the – how do we interpret the summary judgment standard against the video for purposes of which inferences we draw in favor of which party? Yes, that's an important point, Your Honor. The video, if it completely forecloses contentions of the parties, this court can credit the video. There are some – so first of all, I think that the video helps our case. As you stated, the video is face-to-head, so the information is limited. But you can see that it contradicts Meacham's original story and his testimony. He testified three different times, I didn't swerve, I didn't swerve, I didn't swerve. You can see on the video that he swerved. A bystander up the road saw and thought he was swerving. He clearly moves from the right lane towards the middle of the road. That's clear. But whether and to what extent that's a swerve versus an attempt to sort of narrow the passage of the motorcyclist on the left or the right-hand side, that's a question that we can determine ourselves looking at the video just like a trier fact. Is that the standard? Correct. If it's on the narrow question of whether it was a swerve. Right. But the disputes of fact remain, as you said, the motorcyclist is not visible. So Meacham has contended he didn't ever see the motorcyclist move into the left lane. They suggest that maybe he pulled into the left even after Meacham was swerved into his path, whether it was a swerve or not, whereas a bystander said no, the motorcyclist was already trying to pass and then Meacham pulled into his path. So the motorcyclist had fled once from Meacham and then a second time from a second officer, right, at the gas station? Correct. The motorcyclist had stopped and then resumed and that was how the motorcyclist was approaching from behind. I'm sorry, when you say stopped, you're talking about the time at the gas station. At the gas station. Where he'd gotten off the bike, I guess, and was hiding behind him. I don't know if he got off the bike or was pulled behind something on the bike, but Meacham wasn't aware of those details. He only knew that he was off the road somewhere and then got back on the road at the curve behind him on 183. So is the theory for the appellants that it's on the police officer to create a non-dead man roadblock? And since they're going 150 miles an hour, I suppose you'd have to have a long, empty stretch of road to create a roadblock to allow the motorcyclist perhaps to stop at the new roadblock or perhaps to turn around and go the other way and flee a third time? What was the police officer supposed to do in the circumstance beyond what he did? In this case, there was officers planning to intercept Moon up ahead and Meacham was aware of that and he chose to kill Moon instead of letting him. How? What do you mean intercept though? How? By closing off the intersection, Your Honor. But how would that have been any different? No, go ahead. How is that any different than the first two times they tried to stop him? They didn't have any impediments to his movement at the gas station. And it wouldn't have been a dead man roadblock to close off an intersection because the driver would have the opportunity to yield to the show of authority. Whereas here, Meacham crosses the center line like one second before the collision. There's just no chance for Moon to survive that situation. Did the officers down the road have these like mats with nails in them so that they'd cause the tires to get flat? Do you know? I don't know that, Your Honor, and there's no evidence that Meacham knew what they were equipped with. So it's not really before the court for these questions. I wanted to finish. There's something I'm curious about. I don't think it really affects the outcome. But I didn't see anything in the record about why Moon wouldn't stop. I mean, there's nothing about he had warrants out or the things you'd normally expect. Is there any reason he was fleeing? As best we can tell, poor judgment, Your Honor. His 22-year-old motorcycle enthusiast thought he could get away. That's the best we know. And I wanted to complete my answer, Judge Oldham. The Lytle against Bayer County case also involved the use of deadly force, also involved a fleeing vehicle going, in that case, more than double the speed limit. And there was a prior collision with vehicles during that chase. But the Fifth Circuit still held that the use of deadly force was not reasonable. And then notable in that case, because an alternative basis for the holding, was that the deadly force involved kind of shooting at the vehicle in an area where maybe if you miss, you're going to hit a house or somebody. I think that that is comparable here because even if you take all of Meacham's assertions, which this court shouldn't at summary judgment, even if you take his assertions as true, all that he has done is increased the risk of a wreck from whatever it was before with Moon speeding to 100% with Meacham in his path with no possibility that Moon can avoid it. But you'd agree that even on your theory of the clearly established law and qualified immunity and the reasonableness of the seizure, you would agree that what the officer did is reasonable if Moon was in a vehicle? Does it turn on the fact that he's in a specified vehicle, automobile, as opposed to a motorcycle? I don't think this case turns on it being a motorcycle. If anything, the motorcycle militates in favor of less danger because it's got less mass. I think because in the Lytle against Bexar County case, it was a pickup truck, I believe. But you said Lytle involves firearms and discharging of bullets on a road? Yes. So I think that the material question is, does a reasonable officer know that they're using deadly force? I think an officer, of course, with a gun knows they're using deadly force. There is, you know, the defendants have argued in this case that maybe that he didn't think he was using deadly force. But the objective evidence is to the contrary. If Meacham knows that the motorcyclist is approaching at 100 miles an hour and he knows his speedometer says 50 or 45 miles per hour and swerves in front of him, he knows and he testified that he knows that's death. Does he testify he knew how fast the motorcyclist was going? He did not know the speed. Like he didn't radar check him, but he did know that at one point I'm going 100 miles per hour and I know moon is gaining on me and then I slow down further. And then that's when the collision happened. Because based on the video from the property, I gather a branch or something, it looked like maybe it's a surveillance video or something. You can see the police officer go by at one speed and then you see the motorcyclist go by at another speed. And I don't know if we have exactly how fast the motorcyclist is going, but it looks a lot faster than the police officer. I mean, right, so if the police officer is going 100, the motorcyclist was clearly going much faster than 100. Well, earlier in the chase there was a radar check of the motorcyclist, but Meacham wasn't aware of it. So we do know that at one point moon was going up to 150 miles per hour. But the objective evidence from the actual collision shows that at most he was going 110 at that point. So it would have been between 99 and 110 when presumably when Meacham saw him. It's not clear. I think at the summary judgment stage the court should have credited the plaintiff's position. And I'll note that the district court said in a couple of places in its opinion it used the radar check, which there's no evidence Meacham was aware of, so that wasn't. What's your take on the danger, if any, to other motorists on the highway? In this case it's a 75 mile an hour zone, so speeding, we agree speeding is bad. But the officer here testified, given the conditions on this road, that maybe 110 you can drive safely. So I think that when we're just talking about fleeing, we're just talking about this speed on this road in basically perfect weather conditions, the evidence shows that there is not enough danger to reach even the threshold level that was present in the Lytle v. Bexar County case. And that's kind of borne out in other circuit courts of appeals decisions that we laid out in our briefing, in the Sixth Circuit, the Seventh, Eighth, and Eleventh Circuits. That's a very interesting question. What relevance, if any, is a Sixth Circuit decision to the existence of clearly established law in Texas? This Court and the Supreme Court have said repeatedly that a consensus of persuasive authority clearly established law, and in this case those are decisions dating back decades. So I think even in the absence of Jameson, in the absence of Lytle, in the absence of Brower, there would be a consensus here. We couldn't find any case showing that the contrary, and these courts that have reached What about the Fourth Circuit's case, Abney? Doesn't that go the other way? It's a fleeing motorcycle case. It does involve a motorcyclist in Abney, Your Honor, but that motorcyclist was intoxicated on methamphetamine. He had run a stop sign, and he was, I don't understand exactly from the decision, but he's trying to pass vehicles even on a sharp turn and had collided with police officers during the chase. So all of those, I think any of those independent factors would put him at a higher level of risk to the public once the officer knows that. And I think there was also a lot more traffic involved in that fact pattern. So I did want to mention that in the CER reply briefing, the officer has kind of said, well, the fact dispute about when I knew the motorcyclist was approaching is no longer true because the witness recanted. I wanted to point out that in the record there's a transcript showing that he knew the motorcyclist was on the curve of the road, which was behind him, and that's record page 1231.  All right, you've reserved time for rebuttal. We'll now hear from Mr. Blaise. May it please the Court, Counsel. My name is Grant Blaise, and I represent Officer Jonathan Meacham. I want to first address the initial statements of counsel regarding what the trial court did and did not do. The trial court did not find that a genuine issue of material fact existed for trial. As a matter of fact, the trial court actually did not adopt the recommendations of the magistrate relative to the merits of the claim and basically said, I don't need to address this because based upon qualified immunity, summary judgment is proper, therefore I don't need to dive into that. So there was not a finding by the trial court that there was a genuine issue of material fact relative to the underlying merits. As it relates to kind of why we're here, I believe that you asked Judge Oldham, I believe, what is the best case that the plaintiffs have. The cases that I have are Legion, and they're out of the Supreme Court and out of this court. You've got Mullenix, which I believe addresses the qualified immunity standard, and it also addresses a case involving a high-speed chase and the use of deadly force. And in that particular case, the court said the court has never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone be a basis for denying qualified immunity. But in Mullenix, the fleeing suspect who's in his vehicle and is intercepted with a rifle, a police officer shooting from an overpass, had said on a 911 call or a phone call with the police, I have a firearm in the vehicle. So as the officers were making the critical decision to use deadly force against the suspect, they thought he had a firearm. It turns out he didn't have a firearm, if I recall correctly, but they thought he had a firearm. And so doesn't that go to the reasonableness of the decision of the police officer to use deadly force against him? In that particular case, yes. Does the absence of a knowledge that Moon actually did have a gun in his possession, but this officer didn't know that, so that wouldn't be a factor that would play into his decision. But this officer wouldn't necessarily think that he needed to use deadly force to respond to a deadly threat. Do you see what I mean? Yes, Ron, I agree. That's one factor that was applied in Mullinax. But if you look at the case, Mullinax also addressed other cases that are very similar to this case, including the Scott v. Harris case, the Pasco case out of this court, and also the Plumhoff case. And, again, the varying factors relative to what is playing into the decision to terminate a high-speed pursuit all are relatively different. But there's a common theme, and that's high speed on the roads that poses an inherent threat and an inherent risk to other members of the roadway. And if you look at all the cases, including, and I think Scott is the most applicable in this particular case, Plumhoff, and, again, the Fifth Circuit has applied Scott in Thompson v. Mercer and in Pascal. So, I mean, you've got, you don't have, in this case, you don't have a consensus of other authority from other circuits that support the plaintiff's argument. In fact, what you have is direct case law from the Supreme Court and this circuit that, in fact, pretty much established that this officer was entitled to qualified immunity, but not only entitled to qualified immunity, and this is where I think kind of the two standards kind of interchange. In this particular case, the officer's conduct was objectively reasonable based upon the existing precedent relative to dangerous pursuits. You had this, and I don't want to get into the underlying fact disputes relative to whether or not Officer Meacham knew Moon was behind him, whether or not he knew the exact speed, because we don't have to do that. I can take the plaintiff's evidence as true, and that's what I'm supposed to do in the first inquiry or in the analysis. And what was known is that, and what is undisputed, he was going fast. He had already passed other vehicles on the shoulder. There were vehicles, there were innocent motorists on the northbound lane of 183 that were in the presence of this event. So you had a guy going real fast on a motorcycle, you had the presence of innocent bystanders, and universally the cases that have had those facts have not only found that the officer had qualified immunity, but they found that the officer actually acted objectively reasonable and did not violate the fleeing motorist constitutional rights at all. So you think the case law says that any time, excuse me, any time a speeding suspect is fleeing on a traveled road that the officers are able to use deadly force? I'm not saying that that's universal. I mean, obviously if they're speeding and present an inherent danger to a motorist on the roadway, then yes, they would be in danger. When would they not present an inherent danger? To use the example of the OJ, the slow speed chase. I mean, if they're not engaging in conduct that creates, and I believe the language is in Scott, an inherent danger to potential motorists on the roadway, because now you've got a balancing act. Again, it's undisputed. But the first factor of the balancing test for reasonableness is the seriousness of the underlying offense. Correct. And what the courts have focused on when they're talking about the inherent, it's you're on a roadway in a vehicle or a motorcycle, and you're going really, really fast, and it is of your making. And so now the officers are faced with a split-second decision. They've got to weigh the interests of the innocent motorists that have been put in this position by the actions of the fleeing motorist. Who's going to lose in this situation? What does that officer have to do? And that's why it's a tough call. Why wouldn't that pretty much always be a question of fact, depending upon were these motorists pulled over to the side of the road? How heavy was the traffic? Why wouldn't the reasonableness pretty much always be a question of fact? Well, Your Honor, because we're dealing with constitutional issues, and the courts have essentially held when we're dealing with objective reasonableness and we're trying to determine whether or not there's been a constitutional violation, those are legal questions for the court to consider. Assuming, of course, that the facts dispute is not genuine. I mean, there's got to be a genuine issue of material fact. And so in that particular case, I believe in Scott and then in Thompson v. Mercer, the courts basically said, look, we're not going to get into a, hey, is the public or the innocent motorist 100 feet away, 1,000 feet away? Are there 14 of them? Are there 20 of them? They look to basically, again, they go to the inherent nature. Are they on a roadway where the motoring public is? And they don't get into how far or how many, but do they exist? And if they exist, you know, there's not really a fact issue that would be genuine to make something like that go to trial. That would be basically the officer then, the officer did his job, and that job is to paramount public safety. So your position is it's always reasonable for an officer to do what this officer did if it's a speeding vehicle? Your Honor, I would submit it's not only my position, but it's the position of the Supreme Court. When you have a fleeing motorist that is engaging in reckless conduct, and reckless conduct meaning going very, very, very fast, with innocent members of the roadway present, that lethal force to terminate that pursuit is constitutionally permissible. And so that's kind of where we are. Relative to the question, I believe, again, Judge Olin, you asked, do the cases that address high-speed pursuits in the context of a vehicle apply to motorcycles? In the Abney v. Co. opinion out of the Fourth Circuit, that was a motorcycle case. And in fact, the court said it's a distinction without a difference. As a matter of fact, to quote the court in Abney, the fact that Abney was driving a motorcycle rather than a car does not require a different result, since the probability that a motorist will be harmed by a precision intervention technique is high in either circumstance. The motorist they're referring to was the fleeing motorist. I mean, it's a distinction without a difference. As a matter of fact, motorcycles can be a lot more dangerous than an actual vehicle because they can go a lot faster, they're a lot more maneuverable, and they present their torpedoes. But the risk to the motorcyclist between a precision intervention technique, as you call it, is much, much higher than it would be to someone driving a pickup truck, right? I mean, you can bump a pickup truck off the road, you can disable a pickup truck, you can stop a pickup truck at a roadblock, you can put rumble strips down and stop a pickup truck. But if a motorcyclist hits a rumble strip at 150 miles an hour, there's going to be a serious risk of death or serious injury to the motorcyclist. So I'm not sure I understand how the Fourth Amendment analysis should be exactly the same as to the reasonableness of the intervention, regardless of what kind of vehicle the felon's driving. You raise an excellent point, and here's how I would respond. Now we get into the cases that I've cited, Scott v. Harris and Mullinex, Plumhoff, all those. The issue is not the intent of the officer relative to the damage he thinks he's going to create is not relevant. And I believe that to the constitutional analysis, and I believe Justice Scalia in Scott even said that, whether or not the officer intended to kill the individual in terminating the pursuit is not relevant to the constitutional analysis, because deadly force was applied regardless of the intent. The issue is, is it objectively reasonable to terminate the pursuit, even if that means deadly force is applied? And so deadly force and the basic— But you have to look at the risk. I think the case also says you look at risk and culpability, and the risk is much greater that you're going to kill someone in a motorcycle than in some huge SUV or truck by this kind of maneuver. You're absolutely correct, Your Honor. Objectively speaking. Yes, Your Honor. But the court has said essentially if you were—when you try to intercept a vehicle that's fleeing at a high rate of speed, there's a substantial likelihood that death can result. Now, there may be— Could Meacham have left the motorcycle past him and then tried to shoot him? Well, I would tell you I think that would be a worse result than what occurred here, because now you've got a bullet that's heading at innocent motorists. I mean, so I think would he be entitled to qualified immunity if that happened? Probably, because, again, there's—first of all, there is not— there are no decisions that place what occurred on June 24th of 2014 beyond debate relative to the qualified immunity. Well, there are a handful of circuit decisions involving—and I ask this to your friend on the other side— from other courts involving police officers in passenger vehicles and fleeing individuals on motorcycles where summary judgment qualified immunity was denied. Or put differently, qualified immunity was denied at the summary judgment stage because of either the police officer slowed down and bumped the car. I believe that was a Sixth Circuit case. There's another case from the Eighth Circuit where the police officer bumped the motorcyclist off the road, didn't kill the motorcyclist, but caused serious injury. They're all cited in the appellant's brief. And I recognize those are out-of-circuit cases, but his point is this is a consensus. There aren't really any cases that say where you have no reason to think that the motorcyclist creates any risk to the public other than the speed, right? There's no gun. There's no threats. There's no outstanding warrants. So the speed is the threat, that using deadly force is unreasonable. Well, in this case, yes, the speed is a threat and also the presence of innocent motorists in the path of the speeding motorcycle, which again, to me, that brings this within the context of not some extra circuit decisions that may or may not have different fact patterns, but squarely within the holdings of the Supreme Court. And relative to the consensus standard, it actually, the constitutional right can be clearly established by a decision of the United States Supreme Court or this circuit or in the absence of controlling authority by a consensus. Well, on your point about it's always reasonable for a policeman to stop a speeding vehicle with deadly force, I mean, Broward contradicts that, doesn't it? I'm sorry, Your Honor, I didn't catch the end. Doesn't the Supreme Court's decision in Broward, where they did set up a roadblock, but that would contradict the point that you said, wouldn't it? I mean, in Broward, you have a speeding vehicle and the officer set up a roadblock and the court found that was unreasonable. Well, yes, Your Honor. Actually, in Mullinex, the court in Mullinex actually addressed both Broward, Scott, and Plumhoff and essentially held in Mullinex that none of these circumstances create a situation where there is controlling authority that would somehow obviate qualified immunity for an officer placed in this situation. I mean, they addressed Broward in the Mullinex decision and said there is no controlling authority here that would – that an officer should – that is placing the issue of qualified immunity or the actions of the officer beyond debate. But they do establish the legal proposition that you cannot use deadly force simply because you have someone fleeing at a high rate of speed. Because otherwise, as Judge Davis points out, the dead man roadblock case has come out the other way, right? Well, yes, Your Honor. Yes, Your Honor. But that's not what you have here. You don't have just a motorcycle going really fast. You have a motorcycle going really fast on a roadway that is occupied by innocent members of the public. Well, you also have two attempts to intervene before the deadly force was applied. So, I mean, I understand how you don't necessarily need that legal rule. But, I mean, I think to Judge Davis's point, the dead man roadblock case has established that you need more than simply driving really, really fast to justify the deadly force. And, Your Honor, that may be the case. I mean, these are difficult cases. They're difficult questions. As a matter of fact, the Court has recognized that the hazy – I believe the language is the hazy backdrop of addressing these high-speed pursuit cases and the relative liabilities that the officer may face when they're faced with these circumstances. And that's kind of what we have here. How close do you say the facts would have to be to be controlling in this case? That's the million-dollar question relative to a qualified immunity case. And, you know, the courts, you know, it can't be at a high level of generality, and it must be based upon the particular circumstances of this case. I mean, that's the standard that the courts apply. What does that mean in real life and practice? That's why we're here. I mean, these cases are never going to be identical. You know that, I mean. You're right, Your Honor. And kind of what you do is, okay, what were the circumstances that led to the lawsuit or to the circumstances that gave rise to the claim? You know, what was going on? And the courts have to analyze it. They've got to dig deep into the facts to address it. But what the courts have done essentially is said, these are factors that we are going to look at to determine the reasonableness of the officer's actions. And one of the factors is, you know, who created the problem? You know, the fact that this was a routine traffic stop to begin with is kind of irrelevant to the inquiry because now this is no longer a routine traffic stop. This is a, we've got to stop a man on a motorcycle that's going 150 miles an hour, and we don't know why he didn't stop. He could be a murderer for all we know. At this point, the officers don't know. All they know is this man now needs to be stopped, and we need to continue to engage. For example, in the Sixth Circuit, the Buckner case, you had an officer who pulled his car parallel or perpendicular to the roadway and blocked it. And the plaintiff didn't have time to stop, and they found that Brower was close enough. It was a roadblock. He blocked his path. Yeah, that was an intercepting, that was a roadblock where they set it up, and I agree not. But, I mean, how different is that from what we have here where the officers arguably pulled in front and prevented him from passing? I mean, if he only had one or two seconds to react, it's almost certain he's going to hit that car, isn't it? Yes, but I'll be—first of all, Your Honor, that case was pre-Scott, so now you have a Supreme Court addressing this issue. So, again, when you're talking about controlling authority, the consensus is only in the absence of controlling authority. Here we have controlling authority. And so would that case be decided differently now here? I don't know, but that's a factor to consider. But what we do know is this. What occurred, what resulted was deadly force. It wasn't a roadblock, but it was a collision. The courts have said even an intentional, even intentionally trying to stop a vehicle, even intentionally trying to stop the pursuit, does not constitute a violation of the fleeing motorist constitutional rights under these circumstances. It doesn't always, but sometimes it does. Well, Your Honor, I would agree, but in this particular case, I believe that the facts are sufficiently close to the rulings by the Supreme Court and this circuit relative to high-speed pursuits that would place that, that would place the circumstances of this case squarely within the there has been no violation of a constitutional right. And clearly there is no controlling precedent of which Jonathan Meacham should have been aware that would deny him qualified immunity in this particular case. All right. Thank you, counsel. We have your argument. We'll have your rebuttal. You have five minutes. Thank you, Your Honor. First, the district court explicitly adopted in its entirety the magistrate judge's reporting recommendation. That's on record page 2177. And the defendant specifically objected to try to obtain the ruling that I think counsel also just described. And the court held, assuming without deciding that the defendants are correct, it would not change the outcome. So the district court didn't overrule the magistrate judge and then adopted everything that the magistrate judge said. Second, Judge Davis, you asked how close does a case have to be. It needs to have the material questions that would give fair notice to a reasonable officer. And in this case we have that authority. We have Brower and Jameson and more recently the Lytle v. Bayard County case all involved a motorist with equal or greater risk to the public and all finding that in the Brower and Jameson cases that there could be a constitutional violation and then the Lytle case could go to trial because the evidence supported that violation. Counsel opposite referred to a legion of cases. I heard Mullenix, Plumhoff, and Scott as we addressed in the briefing. All of those cases had much greater threat to the public. That was specifically mentioned in the Supreme Court's decision and that was dispositive in those cases. As you mentioned during the questioning earlier, Judge Oldham, in Mullenix there were two specific threats to police officers and the driver was approaching police officers who were trying to stop him without killing him. So the Supreme Court held that even taking the plaintiff's assertions as true, if that officer hadn't fired the shot, then this person who had threatened to kill police officers was about to be stopped right in front of police officers. And then Plumhoff— But doesn't that cut the other way in the sense that they had a rumble strip underneath of the overpass in Mullenix, so they were going to stop the vehicle. And as I recall, the surviving estate of the fleeing individual in that case said that you didn't need to shoot at him with a rifle from the overpass because you were already going to stop the vehicle. There was no way he was going to survive. There was no way he was going to be able to continue fleeing after going over the rumble strip. Yeah, exactly. So the point was stopping is not enough to end the threat in Mullenix because if you stop him and he's alive and his threat is true, he pulls the gun and the officer on the overpass knows that there's still an officer underneath where this rumble strip is. So essentially the rumble strip would give him the opportunity to make good on this threat. So a reasonable officer can conclude that the threat would not be ended unless deadly force was deployed. And I guess I can just quote the case where they said that the officer was, quote, confronting a reportedly intoxicated fugitive set on avoiding capture through high-speed vehicular flight who twice during his flight had threatened to shoot police officers and it was moments away from encountering an officer. Those were the dispositive facts in Mullenix. Now, yes, there was a high-speed vehicular flight in Mullenix, but the court was much more concerned with this specific threat to actually try to kill people, which was no indication that Moon was ever trying to hurt anybody. In Plumhoff, they were saying, look, he's trying to ram people off of the road. Again, there's a specific threat. In Scott, they describe it like a Hollywood movie. It's such a crazy careening chase. It's running red light after red light after red light. There's all these factors on top of the speed. So those are not far from controlling authority. Those are kind of the ceiling where an officer is probably more likely reasonable, not just in the murky area, whereas here we are at a lesser degree of threat. And so that's why Meacham himself testified, look, I don't think deadly force was justified. His main defense is the fact disputes. I didn't intend to kill him. It was an accident. I was mistaken about what I was seeing. But he admitted that if the evidence shows what—if plaintiff's allegations are true, if the evidence shows what plaintiffs say it shows, then my time is expired. Thank you.